```
UNITED STATES DISTRICT COURT                FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
SHEVY CUSTOM WIGS, INC.,                    :
                                            :
                         Plaintiff,         :        MEMORANDUM
                                            :        AND ORDER
         - against -                        :
                                            :        06 CV 1657 (JG)
AGGIE WIGS a/k/a BLUSH WIGS and AGGIE       :
GROSSMAN,                                   :
                                            :
                         Defendants.        :
---------------------------------------------------------------- X
```

A P P E A R A N C E S :

    GOTTLIEB, RACKMAN & REISMAN, P.C.
        270 Madison Avenue
        8th Floor
        New York, NY 10016-0601
    By:   Richard S. Schurin
        Attorneys for Plaintiff

    COWAN, LIEBOWITZ & LATMAN, P.C.
        1133 Avenue of the Americas
        New York, NY 10036-6799
    By:   Ronald W. Meister
        Attorneys for Defendants

JOHN GLEESON, United States District Judge:

Shevy Custom Wigs, Inc. ("Shevy") brings this trademark and unfair competition action against Aggie Wigs and Aggie Grossman (collectively "Aggie"), pursuant to, *inter alia*, the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. § 1051 *et seq.*, and the common law and various statutes of the State of New York. Before me is a motion to dismiss Shevy's amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons discussed below, the motion is granted in part and denied in part.

BACKGROUND

Shevy alleges the following relevant facts, which I accept as true for the purposes of this motion.

Shevy is a successful business that designs and sells wigs and falls made out of human hair. (A "fall" supplements a head of hair, rather than replacing it.) Shevy owns a registered trademark -- SHEVY -- to identify its product. It claims the mark has acquired recognition by wholesale and retail consumers. In addition, Shevy's wigs and falls are alleged to have "certain distinctive features" of design, which "include, but are not limited to":

> the specific lace band at the hairline of the wig or fall; the particular multi-directional part, including the specific size and shape of the multi-directional part; the wefted stretch net; the layered style; the distribution of the hair and the weight of the piece; and the size and shape of the net.

Am. Compl. ¶ 19. Shevy claims that consumers and trade-members "have come to associate such distinctive features of Plaintiff's products with Plaintiff." *Id.* ¶ 20.

Defendant Aggie Grossman, who once worked for Shevy, now has a competing business (defendant Aggie Wigs) selling wigs and falls in the same market. Shevy alleges that the competing wigs and falls sell for lower prices and are of lower quality.

The gravamen of Shevy's complaint is that the "[d]efendants made a decision to produce and sell identical copies of Plaintiff's wigs and falls." *Id.* ¶ 29. Shevy found that out when Federal Express (not a party to this action) mistakenly delivered to Shevy a package that Aggie's overseas supplier[1] had addressed to Aggie. *Id.* ¶¶ 30-31. A Shevy employee opened the

---

[1] The amended complaint states that the supplier is a Chinese business, *see* Am. Compl. ¶¶ 29, 31, but the supplier's airbill attached as Exhibit C to the amended complaint identifies the supplier as a Korean company.

package and found it to contain "SHEVY wigs and SHEVY falls."[2] *Id.* ¶ 32.

In addition to being "identical in appearance" to Shevy's design, the offending falls had labels attached that "bore the Plaintiff's identical SHEVY trademark." *Id.* ¶ 33. Shevy includes one such label in an exhibit. It contains two lines for specification of "Color No." and "Style No.," and typed in black capital letters on the "Style No." line are the words: "SHEVY FALL (16'')." *Id.* Ex. B. At first, Shevy refused to turn the "knock-off products" over to Aggie, claiming that "Defendants would place them into interstate commerce, namely [sic] the marketplace, and customers who receive them[] are likely to mistakenly assume that Defendants [sic] inferior wigs and falls originated from, were sponsored by or otherwise approved by [sic] Plaintiff when they were not." *Id.* ¶ 43. The falls were eventually turned over on consent of the parties, however, with Aggie's counsel maintaining possession of some of the allegedly infringing products pending the resolution of this litigation.

## DISCUSSION

A.  *Standard of Review*

As mentioned above, for the purposes of Aggie's motion to dismiss I assume the truth of the material factual allegations in Shevy's amended complaint. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005). Moreover, the complaint is entitled to all reasonable inferences in its favor and shall not be dismissed for want of additional facts supporting an alleged fact, however unlikely it may appear that the alleged fact will be proved. *Phelps v. Kapnolas*, 308 F.3d 180, 186-87 (2d Cir. 2002) (per curiam). The complaint will be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support

---

[2] As the quoted portions of the amended complaint make plain, it is not clear whether the allegedly infringing products are both wigs and falls or falls alone.

of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

B.  *The Trademark Infringement Claim*

Shevy's amended complaint seeks relief under § 32 of the Lanham Act, 15 U.S.C. § 1114, for Aggie's alleged infringement of the SHEVY mark.[3] To prevail on a trademark infringement claim, a plaintiff must prove (1) a valid mark entitled to Lanham Act protection and (2) the likelihood that the defendant's "use" of the mark will cause confusion. *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 477 (2d Cir. 1996). There is no dispute about the validity of Shevy's mark.[4] Rather, Aggie disputes the legal sufficiency of Shevy's allegations about the defendants' "use" of the mark.

In particular, Aggie contends that the amended complaint does not sufficiently allege that Aggie's use of the SHEVY mark is likely to cause confused, mistaken, or deceived purchasing decisions. *See Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991) ("'[T]rademark infringement protects only against mistaken purchasing decisions and not against

---

[3] That provision states, in relevant part:

Any person who shall, without the consent of the registrant--

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

[4] Shevy's certificate of registration for the mark SHEVY, Am. Compl. Ex. A, entitles Shevy to a presumption that its mark is valid. *See* 15 U.S.C. § 1057(b); *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000).

4

confusion generally.'" (quoting Restatement (Third) of Unfair Competition § 20 note to cmt. b (Tentative Draft No. 2, 1990))). Aggie points out that Shevy's amended complaint lacks a specific allegation that the "Shevy Fall" tags "were ever used or intended for use when goods were sold." Def.'s Br. at 3. Indeed, Aggie suggests the amended complaint contains "no claim that defendants sell other than under the trade name, 'Blush Wigs,' by which plaintiff alleges that defendants are known." *Id.* at 4. Aggie argues that the facts, as stated, therefore fail to state a claim for trademark infringement, because a plaintiff cannot allege consumer confusion without alleging that the defendants used the SHEVY mark in the marketplace.

Aggie is correct that the amended complaint lacks a specific claim that the "Shevy Fall" tags on the items bound for Aggie were actually used, or were intended to be used, in connection with the sales, distribution, or advertising of Aggie's products. The amended complaint alleges that Aggie sells wigs and falls in the Shevy market, that Aggie manufactured and intended to sell copies of Shevy wigs and falls, and that some falls shipped by the manufacturer to Aggie but accidentally received by Shevy had labels marked "Shevy Fall." The amended complaint also states that were Aggie to obtain those falls, it "would place them into interstate commerce, namely [sic] the marketplace[] and customers who receive them, are likely to mistakenly assume that Defendants [sic] inferior wigs and falls originated from, were sponsored by or otherwise approved by [sic] Plaintiff when they were not." Amd. Compl. ¶ 43.

Essentially, Aggie objects that the latter allegation fails to specify that it intended to place the falls into interstate commerce with "Shevy Fall" tags attached. That is true, but the allegation is nevertheless compatible with the *premise* that the "Shevy Fall" tags were intended for such use. After all, the presence of "Shevy Fall" tags on the falls might well make customers

"likely to mistakenly assume" that Shevy was behind the falls. Shevy should be allowed to offer evidence to support this premise.

To be sure, Aggie may well have intended to remove the tags before sale. And Aggie is correct that the amended complaint is compatible with a world in which any likelihood of consumer confusion relating to the parties' competing products springs not from the presence of "Shevy Fall" tags on Aggie's falls, but the striking similarity of the falls' designs. Such a set of facts would be insufficient to state a claim for trademark infringement, but on a motion to dismiss Shevy is entitled to favorable inferences, not unfavorable ones. "[T]he plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), *cert. denied*, 516 U.S. 1159 (1994). Shevy's cause of action should not be dismissed simply because the amended complaint states that Aggie "would place [the Shevy falls] into interstate commerce" and not "into interstate commerce with 'Shevy Fall' tags attached." "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 48.

Aggie cannot complain that it lacked notice of the basis for Shevy's infringement claim. "[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47 (quoting Fed. R. Civ. P. 8(a)) (footnote omitted). Aggie was in fact on actual notice of the grounds for Shevy's trademark infringement claim. Shevy's initial complaint alleged that Aggie had sold wigs with the SHEVY mark attached in the past. *See*

6

Compl. ¶ 40. After Aggie protested in a letter to the Court that the claim had no merit, Shevy deleted the allegation of past sales, but the infringement claim remained. Having taken issue with Shevy's past allegations linking the "Shevy Fall" tags to Aggie's sales, Aggie cannot now argue it lacks notice that Shevy will try to establish a link between tags and sales going forward, especially given Aggie's position that such a link is critical to Shevy's trademark infringement claim.

Accordingly, Aggie's motion to dismiss the claim of trademark infringement is denied.

C.   *The Trade Dress Infringement Claim*

Shevy's amended complaint alleges trade dress infringement of its product design pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[5] Section 43(a) has been interpreted to provide trade dress protection to "the design or configuration of the product itself." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001); *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209-10 (2000). The plaintiff seeking protection for unregistered trade dress must prove "that the allegedly infringing feature is not 'functional,' [*see*

---

[5]   That provision states, in relevant part:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

15 U.S.C. § 1125(a)(3)], and is likely to cause confusion with the product for which protection is sought, [*see id.* § 1125(a)(1)(A)]." *Samara Bros., Inc.*, 529 U.S. at 210. The plaintiff must also prove the "distinctiveness" of the trade dress. *Id.*, *Yurman*, 262 F.3d at 115.

As to distinctiveness, the Supreme Court held in *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000), that a product design is "distinctive" for § 43(a) purposes "only upon a showing of secondary meaning." Such a showing entails demonstrating that "'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Id.* at 211 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)). The distinctiveness requirement derives from the overarching fear that trade dress protection[6] against the copying of "an ordinary product design would create a monopoly in the goods themselves." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997). Accordingly, the Second Circuit has held that "even a showing of secondary meaning is insufficient to protect product designs that are overbroad or generic . . . ." *Yurman*, 262 F.3d at 115 (internal quotes omitted). Plaintiffs must therefore articulate the elements of their product design with specificity to be afforded trade dress protection.[7] "The identification of design elements that compose the asserted trade dress will thus assist in winnowing out claims that are overbroad as a matter of law." *Id.* at 117.

---

[6] Trade dress protection is perpetual. *Yurman*, 262 F.3d at 115.

[7] The requirement that plaintiffs articulate their product design with specificity originated in a line of cases applying the "inherent distinctiveness" test for trade dress distinctiveness. *See Yurman*, 262 F.3d at 116. The Supreme Court in *Samara Bros.* has since held that inherent distinctiveness was not relevant in product design trade dress cases, in which only secondary meaning constitutes a showing of distinctiveness. *See Samara Bros.*, 529 U.S. at 216. The Second Circuit acknowledged that holding in *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001), but held that an articulation of specific design elements is nonetheless required in "any case in which a plaintiff seeks protection for a line of products." 262 F.3d at 116. For the reasons discussed *infra*, I conclude that all § 43(a) product design cases require plaintiffs to articulate with specificity the design elements they seek to protect.

8

Shevy alleges that Aggie has infringed the design of its "wigs and falls." It claims that its design has acquired a secondary meaning. Aggie disputes neither allegation, but argues that Shevy's product design is sketched at too high a level of generality. I agree.

Shevy's amended complaint alleges that "Plaintiff's wigs and falls have certain distinctive features." Amd Compl. ¶ 19. It is impossible to tell, however, whether the features are properties of a line of products, *see* Amd. Compl. ¶ 56 (alleging that "the wigs and falls designed and sold by Plaintiff have acquired secondary meaning"); *id.* ¶ 59 ("[T]he Defendants [sic] products, which upon information and belief, Defendants themselves refer to as a [sic] 'Shevy Fall' or 'Shevy Wig,' are likely to deceive and divert customers away from the competing genuine Shevy Wigs and Shevy Falls."), or of a single product, *see id.* ¶ 30 (alleging that defendants requested the manufacture of "a certain number of 'SHEVY Falls'").

This pleading problem is compounded by the generality of the alleged "distinctive features" of the Shevy product design, which I repeat here:

> the specific lace band at the hairline of the wig or fall; the particular multi-directional part, including the specific size and shape of the multi-directional part; the wefted stretch net; the layered style; the distribution of hair and the weight of the piece; and the size and shape of the net.

*Id* ¶ 19. These allegations are legally insufficient. The issue is not just *which* features are distinctive, but also *how* they are distinctive. The phrase "specific lace band" or "particular multi-directional part" fail to describe what features make the lace band or multi-directional part unique. Similarly, Shevy's other sweeping "descriptions" ("the wefted stretch net," "the layered style") in fact denote categories of features, not the features themselves.

There are several problems with such broad assertions of trade dress protection for Shevy's design. First, lacking "a precise expression of the character and scope of the claimed

9

trade dress," the trier of fact "will be unable to evaluate how unique and unexpected the design elements are in the relevant market." *Landscape Forms*, 113 F.3d at 381. Second, granting Shevy the protection it seeks would provide Shevy with a viable infringement action against any competitor wig or fall with, say, a layered style. *See Samara Bros.*, 529 U.S. at 213 ("Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suits against new entrants . . . ."). Third, such broad relief might well grant Shevy a monopoly over a concept of a wig or fall, rather than a particular design. *See Jeffrey Milstein*, 58 F.3d at 33 ("The level of generality at which a trade dress is described . . . may indicate that the dress is no more than a concept or idea to be applied to particular products."). Trademark protection -- like copyright protection -- does not operate in the domain of ideas. *Id.* at 32. Fourth, Shevy's overly broad descriptions of its claimed trade dress fail to put Aggie on fair notice of how their "Shevy Fall" design is supposed to have infringed Shevy's product design. Aggie cannot "answer and prepare for trial," *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)), without being able to affirm or deny that its product infringes upon Shevy's.

Rather than allow discovery to proceed on Shevy's broad claims of trade dress protection, therefore, I hold that Shevy's claim for infringement of trade dress is dismissed without prejudice to amend consistent with this opinion. Any such amendment shall be filed on or before December 1, 2006.

D.	*The Claims Under New York Law*

Shevy's amended complaint alleges unfair competition under New York common law and the New York Consumer Protection Act, N.Y. Gen. Bus. Law §§ 349-50.

As to the statutory claims, Shevy's motion papers state that Shevy actually intended to bring a claim pursuant to the New York anti-dilution statute, N.Y. Gen. Bus. Law § 360-l. Shevy petitions to amend its pleading accordingly. "Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion '[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.'" *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 46 (2d Cir. 1997) (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (*en banc*)). Nevertheless, I will respect Shevy's intention by dismissing the statutory claims without prejudice to amend on the schedule set forth above.

As to Shevy's common-law claim for unfair competition, Shevy admits that such a claim is "almost indistinguishable" from a § 43(a) claim under the Lanham Act. *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 363 (S.D.N.Y. 1998). Accordingly, this claim is dismissed without prejudice to amend for the reasons discussed above.

CONCLUSION

For the reasons discussed, defendants' motion to dismiss the Lanham Act claim for trademark infringement is denied. The motion to dismiss the Lanham Act claim for trade dress infringement and the claims under the laws of the State of New York is granted. Plaintiff is given leave to file a second amended complaint on or before December 1, 2006.

So ordered.


John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
       November 17, 2006